

WAYNE KLEIN (#3819)
Assistant Attorney General
MARK L. SHURTLEFF (#4666)
Utah Attorney General
Attorneys for State of Utah
160 East 300 South, 5th Floor
Box 140872
Salt Lake City, UT 84114-0872
Telephone (801) 366-0358
Facsimile (801) 366-0315

UNITED STATES DISTRICT COURT

DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| THE STATE OF UTAH,<br><br>                  Plaintiff,<br><br>vs.<br><br>NUCOR CORPORATION, GS INDUSTRIES, INC., GS INDUSTRIES dba GST STEEL COMPANY, MOLY-COP CHILE, S.A.,<br><br>                Defendants. | **COMPLAINT FOR INJUNCTIVE RELIEF**<br><br><br>Civil No. 2:01 C V 0106 - G<br><br><br>Filed: |

The State of Utah brings this civil antitrust action to enjoin the acquisition by GS

Industries, GST Steel, or Moly-Cop Chile (together "GSI") of certain manufacturing assets of

Nucor Corporation (Nucor) and to obtain equitable relief and other relief as appropriate.

Plaintiff, on information and belief, complains and alleges as follows:

      1.      Until about August 2000, GSI and Nucor were vigorous competitors in the

manufacture of large forged steel grinding balls ("large grinding balls") and their sale to mining

1

companies in the United States and Canada. Large grinding balls are those with a diameter of at least five (5) inches.

2.      In the United States, the sale of Nucor's large grinding ball manufacturing assets to GSI would eliminate the only competitor to GSI in North America and would result in GSI acquiring a monopoly in the manufacture and sale of large grinding balls in the U.S. Unless this acquisition is enjoined, the loss of that competition as a result of this sale of assets will result in purchasers of large grinding balls paying significantly higher prices for the purchase of large grinding balls and will result in no competition to GSI in the U.S. for research and development of new technologies and innovations in the manufacture of large grinding balls.

3.      Plaintiff seeks to prevent GSI from acquiring the manufacturing assets of Nucor, acquiring the large grinding ball inventory of Nucor, and enforcing a non-compete requirement pursuant to agreements entered into by Defendants on December 29, 2000.

## I.  JURISDICTION AND VENUE

4.      This action is filed by the State of Utah under Section 16 of the Clayton Act, 15 U.S.C. § 26 to prevent and restrain the violation by defendants of Section 7 of the Clayton Act, 15 U.S.C. § 18.

5.      Defendants Nucor, GS Industries, and GST Steel transact business in the District of Utah, Central Division. Defendant Moly-Cop, Chile, S.A. has announced plans to transact business in the District of Utah, Central Division, if it succeeds in acquiring the manufacturing assets being sold by Nucor. Venue is therefore proper in this district under Section 12 of the Clayton Act, 15 U.S.C. § 22, and 28 U.S.C. § 1391(c).

6.      Defendants GS Industries and GST Steel have been manufacturing large grinding balls which are sold to customers in Utah and other parts of the U.S.  Nucor has been manufacturing large grinding balls at a plant in Brigham City, Utah.  Large grinding balls produced in this plant have been sold to customers in Utah and other parts of the U.S.

7.      In their manufacture and sale of large grinding balls, defendants make sales and purchases in interstate commerce and engage in activities substantially affecting interstate commerce.  The Court has jurisdiction over this action and over the parties pursuant to 15 U.S.C. § 22 and 28 U.S.C. §§ 1331 and 1337.

## II.  BACKGROUND

8.      Until recently, GSI manufactured large grinding balls at its plant in Kansas City, Missouri.  GSI also owns an interest in a joint venture, Moly-Cop Canada, which manufactures large grinding balls at a plant in British Columbia.  Until late January 2001, Nucor manufactured large grinding balls at its plant in Brigham City, Utah.  These are the only plants in North America which manufactured large grinding balls suitable for specialized use in semi-autogeneous grinding mills ("SAG Mills").

9.      SAG Mills are large rotating drums used by mining companies to crush mined rock efficiently, permitting further processing to extract the desired minerals.  Large grinding balls are placed in the SAG Mills and function as the media which crushes ore fed into the rotating drums of the SAG Mills.  As the grinding balls are mixed with ore in the SAG Mills, the grinding balls are worn down and need to be replaced on a regular basis.

10.     SAG Mills are used by many large mining operations in the country, especially in

3

the Western U.S. Mining companies in Utah operate SAG Mills which require the use of large

grinding balls in order to operate with efficiency. A mining company operating several SAG

Mills may consumer 20,000 tons of large grinding balls per year. One mining company requires

the purchase of over 100,000 tons per year. For this company, a price increase of $100 per ton

for the purchase of large grinding balls increases the company's costs by $10 million per year.

      11.    The GSI affiliate in Canada, Moly-Cop Canada, is believed to be operating at near

capacity. It cannot supply sufficient numbers of large grinding balls to mining companies which

previously purchased large grinding balls from Nucor. Even if it could, because Moly-Cop

Canada is owned in part by GSI, it is expected to be unwilling to provide meaningful price

competition or provide innovation which would compete with GSI.

      12.    On or about February 7, 2001, subsequent to GSI's agreement to purchase

Nucor's manufacturing assets, GSI filed for bankruptcy protection. While some of GSI's

manufacturing plants will be reorganized and continue operating, the Kansas City, Missouri

plant, at which GSI manufactures large grinding balls, will be closed permanently. Despite the

bankruptcy filing and the plans to terminate GSI's manufacture of large grinding balls in the

U.S., GSI still plans to proceed with the asset purchase from Nucor.

      13.    GSI sent a notice to purchasers of large grinding balls, on February 7, 2001,

informing them of the closure of GSI's Kansas City plant, but promising that grinding ball needs

would be served by their "global production units" which "are not affected by the bankruptcy

filing . . . ." Plaintiff believes that since the Moly-Cop Canada plant is operating at near capacity

already, GSI planned to meet U.S. demand from its operations at Moly-Cop Chile.

4

14.     With the closure of GSI's plant in Kansas City and the agreement with Nucor to close Nucor's large grinding ball manufacturing process, there will be no U.S. producer of large grinding balls.  Since the only other large grinding ball producer in North America is Moly-Cop Canada, already operating at near capacity, large grinding ball needs of U.S. mining companies would have to be met by imports of large grinding balls from manufacturers on other continents. This will result in a) significantly increased transportation costs for purchasers, b) risks of interruption in supply, c) purchasers being forced to accept a perceived lower quality of foreign-produced large grinding balls, and d) purchasers paying higher purchase prices.

15.     Shortly after the agreement was reached for Nucor to sell its large grinding ball manufacturing assets to GSI, but before GSI's bankruptcy filing, GSI sent a letter to its customers in the U.S. and to large grinding ball customers of Nucor announcing significant price increases, generally amounting to 20% or more.

### III.  DEFENDANTS

16.     Nucor is a Delaware Corporation with its principal office in Charlotte, North Carolina.  Nucor is engaged in the manufacture of various forms of steel.  Nucor has a "Grinding Ball Division" which manufactures small and large grinding balls at its plant in Brigham City, Utah.

17.     GS Industries is a Delaware Corporation with its principal office in Charlotte, North Carolina.  GSI is engaged in the manufacture of various forms of steel.  Until its bankruptcy filing, GSI manufactured large grinding balls at a plant in Kansas City, Missouri. GSI sold large grinding balls to mining customers, including those operating SAG Mills in Utah.

18.     GSI sells grinding media under the Moly-Cop brand.  The joint venture in Canada and GSI's plant in Chile operate under this brand name.

19.     GST Steel is an assumed name of GSI.  GST Steel operates the Kansas City plant of GSI at which GST Steel manufactured large grinding balls.

20.     Moly-Cop Chile, S.A. is an corporate entity registered in Chile.  Its principal offices are in Concepcion, Chile.  Moly-Cop Chile is owned, in whole or in part, by GSI.  Based on the terms of GSI's agreement to purchase Nucor's grinding ball manufacturing assets which includes the sale of grinding ball inventory to GSI and the sale of assets to Moly-Cop Chile and based on the letter from GSI to its U.S. grinding ball customers promising future supply from overseas operations, it is believed that GSI exercises significant, if not total, ownership and practical control over Moly-Cop Chile.

## IV.  TRADE AND COMMERCE

**A.  The Relevant Service Market - Large Forged Steel Grinding Balls**

21.     Mining companies that have constructed SAG Mills have done so because the SAG Mills create significant efficiencies in the mining and milling process.  SAG Mills require the use of large forged steel grinding balls to operate efficiently.  If adequate grinding media are not available for SAG Mills, mining operators would be required to resort to other means of crushing ore or extracting minerals from the mined ore.  This would require that the companies abandon the millions of dollars spent in constructing the SAG Mills and incur the expenses of constructing an alternative processing system.  One mining company estimated the cost of obtaining alternative crushing and screening equipment at $40-50 million.

6

22.     It is impractical for mining companies to substitute small forged steel grinding balls (those less than 5" in diameter) in SAG Mills because it causes a loss of efficiency generally in the range of 30% or more. Such a reduction in efficiency not only results in a lower output of each SAG Mill, but reduces the through-put of the entire mining process. Thus, the mining of the ore must be slowed to avoid stockpiling ore which cannot be processed. In addition, many, if not most SAG Mills would require that the ore be crushed into a smaller size before being processed through the SAG Mill because to operate efficiently, the grinding media must have at least as much mass as the ore being crushed. A large mining company estimates it would lose $100 million per year in efficiency if it were required to convert to small grinding balls in its SAG Mills.

23.     There are large grinding balls available which are made of cast iron rather than forged steel. Cast iron grinding balls are not acceptable substitutes for forged steel grinding balls because the cast iron balls break too easily in the SAG Mills and are softer, requiring more frequent replacement.

24.     There are a limited number of manufacturers of large forged steel grinding balls in Europe, Australia, and Asia. Large grinding balls from these manufacturers have not proven acceptable substitutes to mining companies which have tested their use in U.S. SAG Mills because of their tendency to break more easily, wear out more quickly, and the high costs of their purchase and the added transportation costs to import them from other continents.

25.     If, after the acquisition, GSI were to raise the price of large grinding balls by a significant amount (as has been announced), SAG Mill operators will not be able to switch from

7

large grinding balls to alternative products and will have to absorb the price increases.

**B. The Relevant Geographic Market**

26.     Because grinding balls are so heavy, transportation costs are significant, often constituting 10% or more of the price of the grinding balls. The longer the distance from the manufacturing plant to the mining company's SAG Mill, the higher the transportation costs. In addition, to compensate for the risks of interruptions in supply from foreign manufacturers (or due to possible transportation interruptions), mining company SAG Mills would be required to carry larger inventories of large grinding balls than if there were multiple manufacturers in the U.S.

27.     Most American SAG Mills are located in the Western part of the U.S. Transportation costs, while significant, are manageable for mining companies located within several hundred or even a thousand miles of a large grinding ball manufacturer.

28.     The added transportation costs and higher purchase prices involved in acquiring large grinding balls from overseas plants would add significant costs to a mining operation, already suffering from crippling increases in energy costs. Operators of SAG Mills being forced to absorb 20-30% price increases for large grinding balls will find themselves unable to compete with other types of mining processing which previously were less efficient because those companies had not invested the capital to construct and operate the more efficient SAG Mills. The capital investments made to achieve efficient operations would hold mining companies hostage to the continued use of SAG Mills. The higher operating costs for these SAG Mills would have the effect of rewarding economic inefficiency and punishing the companies who

8

invested heavily to increase productivity.

29.     Because foreign manufacturers's prices generally are higher than those which have prevailed in the U.S. market, combined with higher transportation costs and a perceived lower quality of foreign large grinding balls, U.S. manufacturers of large grinding balls can profitably increase the prices to U.S. mining customers without losing significant sales to overseas competitors or alternative grinding media.

30.     U.S. mining companies have been paying an average of $400 to $450 per ton for large grinding balls from GSI and Nucor.  Prices for large grinding balls from foreign producers are higher; a manufacturer in India is currently quoting large grinding balls at a price of $1,000 per ton, plus shipping.  Shipping costs from Australian producers are estimated to be $130 per ton, on top of a $600 per ton purchase price.

31.     The U.S. is the proper relevant market for the purpose of analyzing the effects of the asset acquisition under Section 7 of the Clayton Act.

**C.  Reduction in Competition As a Consequence of the Asset Acquisition**

32.     Nucor and GSI directly compete with each other in the manufacture and sale of large grinding balls in the U.S.  In this market, Nucor and GSI each account for a substantial share of total revenue from the sale of large grinding balls.

33.     Nucor began producing large grinding balls in 1995.  At the time of Nucor's entry into the market for large grinding balls, prices to purchasers dropped significantly from what had been charged by GSI.  One purchaser indicated that its prices for large grinding balls dropped approximately 19%.  Nucor's 1998 Annual Report explained that Nucor's "high degree of

9

automation results in low costs and highly competitive sales prices." Since that time, Nucor
succeeded in achieving significant market penetration.

34.     In the U.S., the sale of Nucor's assets to GSI, and the transfer of those assets to
Moly-Cop Chile would reduce from two to one the number of firms manufacturing large grinding
balls in the U.S.  If production from the near-capacity Moly-Cop Canada plant is considered, the
number of firms manufacturing large grinding balls in North America would be reduced from
three to two.

35.     Combined with GSI's bankruptcy filing and the announced closure of GSI's large
grinding ball manufacturing plant in Kansas City, Missouri, the transfer of Nucor's grinding ball
manufacturing assets to Moly-Cop Chile would reduce from two to zero the number of firms
manufacturing large grinding balls in the U.S.  If Canadian production of large grinding balls is
included, the number of firms manufacturing large grinding balls in North America would be
reduced from three to one, and that one remaining plant is already believed to be operating at
near capacity.

36.     This asset acquisition will be a "merger to monopoly"giving GSI monopoly power
over the sale of large grinding balls in the U.S. from plants which it controls in British Columbia
and Chile, leaving GSI able to raise prices significantly for operators of U.S. SAG Mills.

37.     Price increases announced by GSI after the asset acquisition was negotiated were
as much as 30% over the prices existing when Nucor was competing against GSI.  Price
increases expected to be absorbed by mining companies would amount to several million dollars
per year for most mining companies.  These higher costs will not be able to be passed on to

buyers of the metals.

**D.   Entry Into Large Grinding Ball Production**

38.      New entry into the production of large grinding balls requires an investment of several million dollars, the construction of significant infrastructure, and access to certain types of steel rolling stock.  The necessary equipment includes a specialized piece of equipment called a "horizontal continuous upsetter" - the "forge."  Upsetters are no longer manufactured so are unavailable to companies wishing to manufacture large grinding balls.  For example, the upsetter sold by Nucor to GSI was manufactured in 1929, originally designed for automobile manufacturing but later adapted for large grinding balls.

39.      In addition to an upsetter/forge, a manufacturer of large grinding balls is required to install large blast furnaces and other equipment that is both expensive and necessitates significant time and infrastructure to create a complete manufacturing process.

40.      Potential competitors who might be able to obtain the necessary upsetter/forge, blast furnace, and other equipment still would need at least two years to construct the necessary infrastructure and install the equipment essential to beginning production.

**E.   Harm to Competition**

41.      GSI's acquisition of Nucor's manufacturing assets would remove a significant competitor in the production of large grinding balls in an already concentrated and difficult-to-enter market.  In this market, the resulting substantial increase in concentration, loss of competition, and absence of reasonable prospect of successful new entry will result in purchasers paying substantially higher prices for the purchase of large grinding balls.

11

42.     The elimination of Nucor as a manufacturer of large grinding balls also would result in the elimination of the company responsible for most of the recent innovation in large grinding ball technology.  Nucor was responsible for the recent development of grinding balls that did not absorb energy during the milling process, eliminating the risk of grinding balls exploding during routine maintenance of SAG Mills.  GSI has been forced to improve the quality of its product in response to Nucor's technological improvements.

## V.  VIOLATIONS ALLEGED

### Count One; Clayton Act Violation

43.     On or about December 29, 2000, Defendants entered into agreements pursuant to which GSI would acquire some of the large grinding ball manufacturing assets of Nucor in Brigham City, Utah.  The purchase price was approximately $4 million.

44.     The likely effect of the acquisition may be to lessen competition substantially and to tend to create a monopoly in interstate trade and commerce in violation of Section 7 of the Clayton Act.  The transaction likely will have the effects that a) competition in the manfuacture and sale of large grinding balls in the U.S. will be lessened substantially, b) actual and potential competition between GSI and Nucor in the manufacture and sale of large grinding balls in the U.S. will be eliminated, and c) prices charged for the purchase of large grinding balls in the U.S. will increase substantially.

### Count Two; Supplemental Claim under the Utah Antitrust Act

45.     The aforementioned practices by Defendants violate the Utah Antitrust Act, Utah Code Ann. §76-10-914 (2).

## VI.   REQUESTED RELIEF

Plaintiff requests:

1.      That GSI's proposed acquisition of Nucor's large grinding ball manufacturing assets be adjudged and decreed to be unlawful and in violation of Section 7 of the Clayton Act and Section 76-10-914 (2) of the Utah Antitrust Act;

2.      That defendants be permanently enjoined from carrying out their agreements consummated on or about December 29, 2000 including those relating to a) the sale of Nucor's large grinding ball manufacturing assets, b) sales to GSI of Nucor's inventory of large grinding balls, and c) a requirement that Nucor not compete against GSI in the manufacture and sale of large grinding balls, or from entering into or carrying out any agreement, understanding or plan, the effect of which would be to combine the businesses or assets of defendants;

3.      That plaintiff have such other and further relief as the case requires and the Court deems proper; and

4.      That plaintiff recover the costs of this action.

DATED This **13**th day of February, 2001

> MARK L. SHURTLEFF
> Attorney General of Utah
> R. WAYNE KLEIN
> Assistant Attorney General
>
> By:  _Wayne Klein_
> Wayne Klein
> Attorneys for Plaintiff
> THE STATE OF UTAH

13